UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC MANFREDI,<br><br>        Petitioner,<br><br>        v.<br><br>SCOTT FRAUENHEIM, Warden,<br><br>        Respondent. | Case No.: 1:13-cv-01907-LJO-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY-ONE DAYS |

        In 2011, Petitioner was convicted of multiple counts of sexual assault on several children and was sentenced to prison for 330 years-to-life plus a term of 58 years. In this action, Petitioner contends the convictions may not stand because only some of the jurors viewed a film admitted into evidence a second time and because the trial court erred in failing to conduct a hearing into the refusal of the remaining jurors to view the film a second time. Because the Court finds Petitioner has not raised a clearly established federal constitutional right and because it finds no error, it recommends the petition be **DENIED**.

I.       **PROCEDURAL HISTORY**

        In 2011, in the Tulare County Superior Court, a jury convicted Petitioner of multiple counts of sexual assault on several children. The Court sentenced him to an indeterminate prison sentence of 330 years-to-life plus a determinate sentence of 58 years. (Lodged Document ("LD") 4, pp. 2-3).

        Petitioner appealed to the California Court of Appeals, Fifth Appellate District (the "5th DCA"),

which affirmed Petitioner's convictions. (LD 4).  Petitioner filed a petition for review in the California Supreme Court, which denied the petition. (LD 5; 6).

## II.    FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

Defendant Eric Manfredi was convicted of dozens of counts of child molestation and related charges. His appeal is based on the refusal of three jurors to leave the jury room while the other nine jurors went to the courtroom for a second viewing of a video Manfredi made of himself sodomizing one of his victims. Manfredi contends that the three jurors' refusal to attend the second viewing denied him the right to a unanimous jury verdict. He also argues that the court abused its discretion when it did not investigate the three jurors to determine whether their behavior was misconduct. We affirm.

 FACTUAL AND PROCEDURAL HISTORIES

The Tulare County District Attorney filed an information on October 2, 2009, charging Manfredi with 68 counts involving six minor victims, as follows:

[¶¶ ]

The prosecution presented evidence that Manfredi molested minor boys many times over many years. The victims Z.K., C.A., J.A., and D.A. all testified about their experiences. The jury watched clips of videos made by Manfredi and found in Manfredi's apartment, showing Manfredi engaged in acts of molestation with C.A. and Z.K. The victims J.K. and L.R. did not testify, but the jury was shown videos found in Manfredi's apartment that showed both of them being molested by Manfredi. The jury also saw videos of two unidentified minor male victims.

During its deliberations, the jury sent a note to the judge asking for a second viewing of one of the video clips. The note said, "We would like to view CD 105–001 for Count 9 where defendant allegedly sodomizes victim." This video was the People's exhibit 4A–2, which showed Manfredi with a victim who had been identified as L.R.

The bailiff brought nine jurors into the courtroom for the second viewing of this exhibit. He announced that the other three jurors "are not going to participate in this." The video was played for the nine jurors. The jurors went back to the jury room and shortly afterward a verdict was reached. At that point, defense counsel objected:

> "During the last viewing of the evidence only nine of the jurors participated, the other three stayed in the jury room and I'm putting that on the record because I don't think that's an appropriate way for a jury to evaluate evidence."

The prosecutor replied that "they all saw it together the first time so that's maybe why the three didn't want to come out." The court overruled the objection...

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

> "[M]y take on that is that 9 of the 12 jurors still had a question on that particular count. They needed that clarified. There [were] no discussions going on so no deliberations took place so your comment is noted."

The jury found Manfredi guilty as charged, except that it failed to return a verdict on count 46.

The court sentenced Manfredi to a determinate term of 58 years plus an indeterminate term of 330 years to life, calculated as follows: 22 consecutive terms of 15 years to life for counts 1–20, 34 and 52; eight years for count 22; eight months consecutive for each of counts 21, 23–28, 57 and 58; one year consecutive for each of counts 29, 32, 55 and 56; and two years consecutive for each of counts 30, 31, 33, 47–51, 53, 54, and 59–68. For counts 35–46, Manfredi was sentenced to time served.

(LD 4, pp. 1-4).

### III.   DISCUSSION

#### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

#### B.   Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of  the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500.  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

## IV.   Petitioner's Claims

In this action, Petitioner claims: (1) He was denied his federal constitutional right to a unanimous jury when some jurors viewed a self-made film while others remained in the jury room; and, (2) The trial court erred in failing to conduct a hearing into potential jury misconduct regarding the three jurors who remained in the jury room while other jurors reviewed evidence.

   A.   Jury Unanimity.

      1.   The 5th DCA's Opinion.

> Manfredi argues that the court violated his constitutional right to a unanimous jury verdict by allowing nine jurors to take a second look at an exhibit while the other three jurors remained in the jury room. We disagree.
>
> Manfredi cites no authority stating that if any of the jurors takes a second look at an exhibit, all the jurors must do so. Instead, he cites cases standing for other propositions and would have us conclude that they are similar enough to cover this situation.
>
> First, Manfredi cites People v. Collins (1976) 17 Cal.3d 687, 693, in which our Supreme Court held that if an alternate juror is substituted during deliberations, then deliberations must begin anew with the new juror. The court stated that the right to a jury trial "requires each juror to have engaged in all of the jury's deliberations" and that "[t]he requirement that 12 persons reach a unanimous verdict is not met unless those 12 reach their consensus through deliberations which are the common experience of all of them."  The court summarized its remarks on this issue by saying: "By this we mean that a defendant may not be convicted except by 12 jurors who have heard all the evidence and argument and who together have deliberated to unanimity." Manfredi also cites Ballew v. Georgia (1978) 435 U.S. 223 and Allen v. United States (1896) 164 U.S. 492, in which the United States Supreme Court emphasized the importance of jurors deliberating together.
>
> The viewing of an exhibit for a second time by nine jurors in this case did not contravene the principle that a jury verdict must be based on deliberations in which the jurors all participated. There is nothing in the record to indicate that the three jurors who remained in the jury room refused to deliberate on any issue, or that the two groups of jurors deliberated separately. The manifest purpose of the nine jurors was to be more sure of what they had seen. The natural conclusion to be drawn about the other three was that they already felt sufficiently sure and therefore had no need to repeat what likely was an unpleasant experience. These facts do not cast doubt on the jurors' fidelity to their duty to deliberate together.
>
> Next, Manfredi cites People v. Cleveland (2001) 25 Cal.4th 466 (Cleveland), in which our Supreme Court listed examples of refusal to deliberate:
>
>> "Examples of refusal to deliberate include, but are not limited to, expressing a fixed

> conclusion at the beginning of deliberations and refusing to consider other points of view, refusing to speak to other jurors, and attempting to separate oneself physically from the remainder of the jury." (Cleveland, supra, 25 Cal.4th at p. 485.)

Manfredi says the three jurors who remained behind were "not examining the evidence with the rest of the jury" and were separated from the other jurors.

The examples in Cleveland do not show that the three jurors were refusing to deliberate in this case. All 12 jurors had already examined the evidence together. We do not consider the nonparticipation of some jurors in a second viewing to be a failure to deliberate. Similarly, the three jurors were not "attempting to separate" themselves from the others. They merely remained behind in the jury room while the others left for the second viewing. The separation that resulted did not, under these circumstances, indicate any likelihood that there was a rift among the jurors that would interfere with their deliberating together.

In his reply brief, Manfredi cites a recent Supreme Court decision in a death penalty case, People v. Allen (2011) 53 Cal.4th 60 (Allen). In Allen, two jurors conducted a separate meeting between themselves to discuss a third juror's behavior. They believed the third juror had made up his mind about the case before deliberations started. (Id. at p. 66.) The court investigated, found the juror committed misconduct, and decided to replace the juror with an alternate. (Id. at p. 68.) The Supreme Court held that the record did not support the trial court's finding and that the removal of the juror was an abuse of discretion. The guilt and penalty phase judgments were reversed. (Id. at pp. 71, 78–79.) In a footnote, the Supreme Court agreed with the Attorney General's concession that the separate meeting between the two jurors who brought the matter to the trial court's attention was misconduct. The trial court had also found that this meeting was misconduct but did not discharge the two jurors. (Id. at p. 69, fn. 7.)

Allen does not support Manfredi's position. The three jurors who remained in the jury room in this case did not conduct a meeting to discuss anything separately from the other jurors. They merely remained in the jury room when the other jurors left. In sum, there is no law requiring all jurors to participate when evidence is viewed a second time at the request of some jurors. The court did not err when it allowed the three jurors to remain in the jury room while the other nine reexamined People's exhibit 4A–2.

Manfredi also contends that the court erred because it did not give the jury the admonition required by Penal Code section 1128 when the nine jurors came into the courtroom and the three stayed in the jury room. Section 1128 states: "If the jurors are permitted by the court to separate, the court shall properly admonish them as provided in subdivision (b) of Section 1122." Section 1122, subdivision (b), provides:

> "The jury shall also, at each adjournment of the court before the submission of the cause to the jury, whether permitted to separate or kept in charge of officers, be admonished by the court that it is their duty not to conduct research, disseminate information, or converse among themselves, or with anyone else, on any subject connected with the trial, or to form or express any opinion about the case until the cause is finally submitted to them. The court shall clearly explain, as part of the admonishment, that the prohibition on research, dissemination of information, and conversation applies to all forms of electronic and wireless communication."

Assuming for the sake of argument that the court should have called the three jurors into the courtroom, given them this admonition, and sent them back to the jury room, we conclude that the failure to do this was not prejudicial. In its charge to the jury, the court said, "You must discuss the case only in the jury room only when all jurors are present." Later, during a break in deliberations, the court told the jury, "Remember you cannot discuss this case with anyone when you're not deliberating not even with each other. If you go to lunch together, you can only

> discuss the case when all 12 of you are in the jury room...." We presume jurors understand and follow the court's instructions. (People v. Holt (1997) 15 Cal.4th 619, 662.)

(LD 4, pp. 4-7).

### 2. Federal Standard And Analysis.

Under California law, a jury verdict in a criminal case must be unanimous. See People v. Collins, 17 Cal.3d 687, 693, 131 Cal.Rptr. 782, 552 P.2d 742 (1976). The Supreme Court, however, has never recognized the existence of a comparable right under the federal Constitution. On the contrary, the Supreme Court has declared that "a state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict." Schad v. Arizona, 501 U.S. 624, 634 n. 5, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991); see also Apodaca v. Oregon, 406 U.S. 404, 406, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) (no Sixth Amendment right to a unanimous verdict in a state criminal trial): Johnson v. Louisiana, 406 U.S. 356, 359, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) ("[T]his Court has never held jury unanimity to be a requisite of due process of law.").

Furthermore, jurors are not constitutionally required to reach unanimous agreement on alternative theories of criminal liability. See Schad, 501 U.S. at 631 ("We have never suggested that in returning general verdicts ... the jurors should be required to agree upon a single means of commission..."); McKoy v. North Carolina, 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) ("Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict"); see also Richardson v. United States, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) ("[A] federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime.").

Accordingly, Petitioner had no "clearly established" federal constitutional right to a unanimous verdict, and therefore his first habeas ground fails to provide a basis for relief. See Hassan v. Morawcznski, 405 Fed. App'x 129, 131–32 (9th Cir.2010) (unpublished opinion) (state court's rejection of claim based on failure to give special unanimity instruction did not warrant habeas relief because "the Supreme Court 'has never held jury unanimity to be a requisite of due process of law' " (quoting Johnson, 406 U.S. at 359)).

Second, even if the foregoing were not the case, the record herein does not show a lack of unanimity.  At best, what it shown is that three of the jurors felt no need to re-screen a videotape introduced into evidence—and viewed previously by all of the jurors collectively—of Petitioner sodomizing one of the victims.  To conflate the process of jurors reviewing evidence with their deliberative process in reaching a unanimous verdict is simply fallacious.  If Petitioner were correct, then each time one or more jurors reviewed *any* documentary or photographic evidence introduced and admitted at trial, *all* of the jurors would have to review the very same exhibits as well or risk impugning the verdict as not being unanimous; clearly, this is specious.  Petitioner does not cite, and the Court is not aware of, any cases expressing such a view.

Finally, even if some error could be established by the facts in this case, they were harmless under Brecht.  The evidence of Petitioner's guilt was overwhelming, and it is difficult to conceive how the simple fact that three jurors saw no need to re-screen an undoubtedly disturbing videotape could have had a "substantial and injurious" impact on the verdict.  It is reasonable to assume that the initial screening of the video by all members of the jury was sufficient for the three jurors to adequately recall its content and deliberate on its probative value.  There is no evidence the actions of the three jurors has any further legal significance.  Certainly, their actions do not rise to the level of a federal constitutional violation.  Accordingly, the first claim for relief should be denied.

### B. Failure To Conduct A Hearing On Juror Misconduct

Petitioner next contends the trial court erred in failing to conduct a hearing regarding the potential misconduct of the jurors who remained in the jury room.  This contention is also without merit.

#### 1. The 5th DCA's Opinion.

> Manfredi argues that the court was required to conduct an investigation to determine whether the three jurors who remained in the jury room were engaged in a refusal to deliberate.
>
> A trial court should conduct "an inquiry sufficient to determine the facts" when it is "put on notice that good cause to discharge a juror may exist." (People v. Burgener (1986) 41 Cal.3d 505, 519, *overruled on other grounds* by People v. Reyes (1998) 19 Cal.4th 743, 756.)  The court's decision on whether or not to conduct a hearing is reviewed under the abuse of discretion standard. (Burgener, supra, at p. 520.)
>
> There was no abuse of discretion. As we have said, the jury's behavior is easily explained by legitimate considerations: Nine jurors felt a need to reexamine the video to be sure of what it

8

showed, while three jurors were satisfied with the first viewing. The court could, within the bounds of reason, conclude that the facts did not amount to notice that good cause to find misconduct might exist.

(LD 4, pp. 7-8).

### 2. Federal Standard And Analysis.

As with the previous argument, no "clearly established" federal law exists requiring all jurors to view the same evidence and exhibits in the same way, for the same duration of time, or the same number of times. 28 U.S.C. § 2254(d)(1). Thus, to the extent that Petitioner is attempting to raise a federal constitutional claim, he fails.

To the extent that Petitioner's claim is premised on state law, this Court is bound by a state appellate court's application of its own laws. Here, the 5th DCA held that the trial court did not abuse its discretion in failing to conduct a hearing regarding the three jurors who did not wish to re-screen the videotape of Petitioner sodomizing one of the victims. The Court specifically noted that the trial court could have "within the bounds of reason, conclude[d] that the facts did not amount to notice that good cause to find misconduct might exist." In the Court's view, this is exclusively a state law issue and the state courts have spoken. This Court has no authority to review such a claim. Hicks v. Feiock, 485 U.S. 624, 629 (1988)(a determination of state law by a state appellate court is binding in a federal habeas action); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (federal habeas court must respect a state court's application of its own law and must not engage in de novo review); Clemons v. Mississippi, 494 U.S. 738, 739–740 (1990)(a federal court has no basis for disputing a state's interpretation of its own law).

Finally, even if the foregoing were not true, any error would be harmless under Brecht. As with the previous argument, nothing in the record supports a conclusion that the trial court's failure to conduct a hearing had a "substantial and injurious effect" on the verdict. Brecht, 507 U.S. at 623. If anything, conducting such a hearing would have had the likely effect on the other nine jurors of highlighting just how offensive Petitioner's conduct on the videotape was seen to be by three of their fellow jurors. This could only have been prejudicial to the defense. For all of these reasons, the Court recommends that this claim be rejected.

**RECOMMENDATION**

Accordingly, the Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be **DENIED** with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. **Within 21 days** after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed **within 10 days** (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **November 16, 2015**              /s/ Jennifer L. Thurston
                                             UNITED STATES MAGISTRATE JUDGE